IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAMON DUKES | : | |
| | : | |
| v. | : | Civil No. CCB-11-876 |
| | : | |
| THE STATE OF MARYLAND, *et al*. | : | |
| | : | |

**MEMORANDUM**

Damon Dukes, proceeding *pro se*, has sued the State of Maryland Office of the Attorney General, the State of Maryland Department of Labor, Licensing, and Regulation, and four of the Department's employees, Alexander Sanchez, Donna Watts-Lamont, Judy Smylie, and Beth Woodland-Hargrove. Mr. Dukes brings suit pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional right to due process during state administrative proceedings regarding his application for unemployment benefits. Defendants have filed a motion to dismiss, or, in the alternative, a motion for summary judgment. The issues in this case have been briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the defendants' motion will be granted.

**BACKGROUND**

Damon Dukes was an employee in the maintenance department of the Caves Valley Golf Club from February 2005 until May 2009. Mr. Dukes is a single father of two, and during his employment with Caves Valley he missed work on many occasions to care for his family. (*See* Def.'s Mot. to Dismiss, Ex. C at 24-28; *Id.*, Ex. D). On May 12, 2009, Caves Valley terminated

1

Mr. Dukes' employment, citing "numerous incidents of personal matters that have resulted in [his] need to miss work, or leave without prior notification," among other reasons. (Compl., Ex A). Following his termination, Mr. Dukes applied for unemployment insurance benefits with the Maryland Department of Labor, Licensing and Regulation ("DLLR").

After an initial hearing by telephone with a DLLR claims specialist, Mr. Dukes's application for benefits was denied because the specialist found his "excessive absenteeism" constituted gross misconduct under § 8-1002(b) of the Maryland Labor and Employment Code. (Def.'s Mot. to Dismiss, Ex. A).  Mr. Dukes appealed this decision to the DLLR Division of Lower Appeals, where he and a representative of Caves Valley testified in person before Hearing Examiner Beth Woodland-Hargrove.  (*Id.*, Ex. C).  In the hearing, the representative of Caves Valley presented documents prepared by Mr. Dukes's direct supervisor "regarding Mr. Dukes' separation." (*Id.*, Ex. C at 43).[1]  After Mr. Dukes objected because he had not previously seen the material, Examiner Woodland-Hargrove agreed to leave the record open to give him the opportunity to review the documents and respond in writing. (*Id.*, Ex. C at 46). She then later issued a decision affirming the denial of benefits. (Compl., Ex. B).

In response to Examiner Woodland-Hargrove's ruling, Mr. Dukes made an "attempt to file a legal grievance" by writing to Ms. Judy Smylie, the Chief Hearing Examiner of Lower Appeals, and later to Mr. Alexander Sanchez, the Secretary of Labor, Licensing & Regulation for the State of Maryland. (Compl., Exs. D & E).  He also, more appropriately, appealed the decision to the DLLR's Board of Appeals.  Defendant Donna Watts-Lamont, the Chairperson of

---

[1] According to the transcript of the hearing, the packet of documents included approximately 14 pages. The packet appears to have been added to the administrative record as "Employer's Exhibit 1," but was not included in either party's submission to this court.

the Board of Appeals, signed the order denying his petition for review. (*See* Compl., Ex. G). Having exhausted his appeals within the DLLR, Mr. Dukes then sought judicial review in the Circuit Court for Baltimore County.

In these communications and appeals, Mr. Dukes presented a variety of objections to Examiner Woodland-Hargrove's findings of fact and to the use of hearsay evidence presented by the golf club. (*See* Def.'s Mot. to Dismiss, Ex. E; Compl., Exs. D & E). He then submitted a "Motion for Default Judgement and Sanctions" to the Circuit Court, citing the absence in the administrative record of the written response that he alleged to have sent in response to Examiner Woodland-Hargrove's instruction at the hearing. (Compl., Ex. H).  The DLLR, represented by the Office of the Attorney General, responded with a motion to remand the case back to the agency for consideration of the full record. (*Id.*, Ex. I).

Over Mr. Dukes's objection, the Circuit Court granted the remand instead of a default judgment. (*Id.*, Ex. J & K). Mr. Dukes has appealed this decision, and consideration of this appeal is now pending before the Maryland Court of Special Appeals.  Meanwhile, on remand, Examiner Woodland-Hargrove attempted to hold another hearing, at which Caves Valley did not appear.  She subsequently reaffirmed her earlier decision, this time expressly considering the material that had not previously been included in the record.  Examiner Woodland-Hargrove concluded that Mr. Dukes "failed to fulfill his obligation to the employer to work a full 40 hour week" and that "[t]he use of sick, vacation or personal leave to be paid for the time missed or that the proper procedures were followed cannot be used to justify the failure of claimant to abide by his obligations as a full time employee." (Def.'s Mot. to Dismiss, Ex. F at 3).  Mr. Dukes then appealed to the DLLR Board of Appeals for the second time. (*Id.*, Ex. H).

Thus, at the time the federal lawsuit that is the subject of this opinion was filed, Mr. Dukes already awaited decision on two separate appeals, the first at the DLLR Board of Appeals and the other in the Maryland Court of Special Appeals. The essence of his claim before this court is that (1) Examiner Woodland-Hargrove denied Mr. Dukes his constitutional right to due process by denying his requests to subpoena his employer's timesheets, (*Id.*, Ex. C at 46-47), and relying on hearsay evidence, and (2) the other defendants violated Mr. Duke's rights by acquiescing to the actions of their subordinate. (Pl.'s Resp. to Mot. to Dismiss at 5-6). Mr. Dukes does not seek injunctive relief from this court. Rather, he seeks $15 million dollars in compensatory and punitive damages from each defendant.

## **STANDARD OF REVIEW**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To

survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## **ANALYSIS**

Defendants argue for dismissal under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). In the alternative, they claim immunity from §1983 liability. And, if the court were to disagree on both theories, defendants argue that the complaint fails to state a claim under §1983 because Mr. Dukes has no right to collect unemployment benefits and therefore no violation of due process can have occurred. The court finds that *Younger* abstention is inappropriate in this case, but that the complaint must be dismissed under the doctrines of sovereign immunity, quasi-judicial immunity and qualified immunity. Dismissing Mr. Dukes's complaint does not require deciding the propriety or constitutionality of the actions of Hearing Examiner Woodland-Hargrove or Mr. Dukes's substantive claim for unemployment benefits. Indeed, it would be difficult to do so, given that this court has not been provided with the full administrative record.

## I. Abstention

Defendants first contend that this court must abstain from deciding this case. The question is a close one. This court takes seriously the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Even so, any decision on abstention must heed the "basic proposition that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). Even where *Younger* abstention is at issue, the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given." *Deakins v. Monaghan*, 484 U.S. 193, 531 (1988) (citation omitted).

The Supreme Court has fashioned a three-part test for determining when the *Younger* abstention doctrine applies. Abstention is appropriate where 1) there are ongoing state judicial proceedings; 2) the proceedings implicate important state interests; and 3) there is an adequate opportunity to raise federal claims in the state proceedings. *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (1994) (citing *Middlesex*, 457 U.S. at 432). Contrary to defendants' assertion, the particular facts and circumstances of this case do not fit squarely within this test.

In *Younger v. Harris*, the Supreme Court held that a federal court should abstain from awarding injunctive or declaratory relief that would interfere with a pending state criminal proceeding. 401 U.S. 37, 41 & n.2. The Court later held that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are

6

involved." *Middlesex*, 457 U.S. at 432 (footnote omitted). The Court has not, however, required abstention from rulings related to remedial state administrative proceedings like the unemployment insurance determination at issue in this case. In *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986), the Supreme Court applied *Younger* to pending state administrative proceedings, but "distinguished remedial state administrative proceedings . . . from those that are coercive, concluding that *Younger* requires federal courts to abstain in favor of pending state administrative proceedings that are coercive in nature." *Moore v. City of Asheville*, 396 F.3d 385, 395 n.4 (4th Cir. 2005) (citing *Ohio Civil Rights Comm'n*, 477 U.S. at 627 n.2).

The Fourth Circuit has twice reiterated that the distinction between remedial and coercive administrative proceedings is relevant to determining whether abstention is appropriate. In *Moore*, the plaintiff had been cited by a city agency for violations of a municipal noise ordinance. 396 F.3d at 387. Instead of appealing the administrative determination within the designated administrative process or to state court, the plaintiff brought suit in federal court. The court abstained, finding that "a defendant to a coercive state administrative proceeding must exhaust his state administrative and judicial remedies." *Id*. at 388. In *Laurel Sand & Gravel, Inc. v. Wilson*, the plaintiff corporation had been charged, by a state agency under a state statute, with liability for damage from its mining operations. 519 F.3d 156, 160-61 (4th Cir. 2008). The company forewent state court review in favor of a federal suit, but the court abstained after finding the state administrative hearing procedures to be "clearly coercive." *Id.* at 166.

Neither *Moore* nor *Laurel Sand* lay out a clear method for determining whether a proceeding is remedial or coercive, nor do they explain exactly how the distinction fits into the

7

traditional three-part Supreme Court test for *Younger* abstention. Other circuits, however, have also adopted the distinction, but given greater guidance to the lower courts.[2] The Tenth Circuit's decision in *Brown ex rel. Brown v. Day*, 555 F.3d 882 (10th Cir. 2009), citing *Moore* and *Laurel Sand* approvingly, develops a structured and coherent approach for integrating the remedial/coercive distinction into the traditional three-part *Younger* inquiry. *See, e.g.,* 555 F.3d at 889 n.5 ("We prefer the coercive/remedial distinction because our sister circuits tend to use that articulation.") (citing *Moore*, 396 F.3d at 388). Under this approach, district courts are instructed to break down the initial prong of the *Younger* inquiry into two "sub-parts," *id.* at 888, to determine first whether there is an "ongoing" state proceeding, and second whether that proceeding "is the *type* of state proceeding that is due the deference accorded by *Younger* abstention." *Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 369 (1989)) (emphasis in original). To be the type of proceeding that is due deference under *Younger*, administrative proceedings "and state judicial review thereof" must be coercive rather than remedial. *Id.* at 892.

Courts have found three factors relevant to determining whether administrative proceedings and subsequent state court review are remedial or coercive. First, a coercive proceeding is generally one that has been initiated by the state, where the participation of the federal plaintiff in the state proceeding was "mandatory." *See Brown*, 555 F.3d at 891.[3] Second, courts have determined proceedings to be coercive where "the state proceeding is itself the

---

[2] In *Woollard v. Sheridan*, 2010 WL 5463109 (D. Md. Dec. 29, 2010), the district court also looked to other circuits for guidance on the distinction. While the case is unreported, and thus lacks precedential value, the analysis is comprehensive and persuasive.

[3] *See also Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010) (holding that "*Younger* does not apply when the federal plaintiffs are also *plaintiffs* in the state court action and the plaintiffs are not attempting to use the federal courts to shield themselves from state court enforcement efforts") (citation omitted) (emphasis in original).

wrong which the federal plaintiff seeks to correct via injunctive relief," *id.* (quoting *Kercado-Melendez v. Aponte-Roque*, 829 F.2d 255, 260 (1st Cir. 1987)). And finally, the commission by the federal plaintiff of some alleged "bad act" is a "common thread" in abstention cases where the state proceeding is found to be coercive. *Brown*, 555 F.3d at 891.

The DLLR administrative proceeding Mr. Dukes challenges appears to be remedial. That Mr. Dukes seeks to remedy a wrong in the state proceeding weighs toward finding the proceeding coercive. But alone this factor is not determinative, and the other factors weigh heavily in the opposite direction.[4] Mr. Dukes, not the state, brought the case initially to the DLLR. He could have simply declined to apply for unemployment benefits, thus his participation in the proceeding was not mandatory. And, Mr. Dukes's absenteeism from work is not the kind of bad act that has been a common thread in proceedings found to be coercive by the Fourth Circuit. In *Moore*, for example, the plaintiff had violated a local law. 396 F.3d at 387. In *Laurel Sands*, the plaintiff had been held liable under a state statute. 519 F.3d at 160-61. In both cases, the act at issue was worthy of punishment or discipline by the state, and the administrative proceeding was an enforcement action brought originally by state. Mr. Dukes's absenteeism, and his subsequent application for unemployment benefits, simply does not fit the bill. Accordingly, the unemployment proceedings are not coercive; they are remedial.

The Fourth Circuit has not previously addressed a case with the exact procedural posture presented by Mr. Dukes, where a remedial administrative proceeding has been appealed and state court review is pending at the time the federal suit is brought. But, "[i]t has not been

---

[4] Again, the district court's analysis in *Woollard* is persuasive. There, the court concluded that the administrative proceeding was non-coercive where the plaintiff had initiated the proceeding and had not committed a bad act, even though the proceeding itself was the harm about which the plaintiff complained. 2010 WL 5463109 at * 4-5.

previously suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing noncoercive executive action." *Goodhart v. Board of Visitors of the University of Virginia*, 451 F.Supp.2d 804, 810-11 (W.D. Va. 2006). The weight of authority in the Fourth Circuit and its sister circuits suggest that *Younger* abstention in such a case is inappropriate.[5] Thus, because the DLLR proceeding is remedial, neither the proceeding itself nor the subsequent state court judicial review are the type of ongoing state judicial proceeding to which *Younger* applies, and the defendants' request for abstention will be denied.[6]

## II. Immunity

While *Younger* abstention is not appropriate, Mr. Dukes's claims still must be dismissed under the Eleventh Amendment and the doctrines of quasi-judicial and qualified immunity.

### A.     The Eleventh Amendment

The Eleventh Amendment prohibits suit in federal court by private individuals against a state unless the state has consented to suit and/or Congress has lawfully abrogated the state's Eleventh Amendment immunity.  *See Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003); *Lewis v. Bd. of Ed.*, 262 F.Supp.2d 608, 612 (D. Md. 2003).  While the State of Maryland has waived its sovereign immunity in the Maryland Tort Claims Act, it has done so only for actions

---

[5] Defendants have not raised any other abstention doctrines. Given the determination of immunity below, this court need not consider whether *Burford* or *Colorado River* abstention should be applied *sua sponte*.

[6] Because I conclude that the DLLR proceeding is not the type of proceeding to which *Younger* applies, I need not address in depth Mr. Dukes's request for a stay in lieu of abstention. However, were *Younger* to apply here, Mr. Dukes's claim would likely merit a stay because it is a claim for monetary damages alone and not for injunctive relief. *See Nivens v. Gilchrest*, 444 F.3d 237, 248 (4th Cir. 2006) ("A '[d]istrict [c]ourt has no discretion to dismiss [on *Younger* grounds] rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.'" (quoting *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)); *Suggs v. Brannon*, 804 F.2d 274, 279 (4th

brought in state court. Md. St. Gov't. Code Ann. § 12-104(a)(1). And though 42 U.S.C. §1983 permits claims against "persons" who cause any citizen to be deprived of any rights, a state agency is not a "person" as the term is used in the statute. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Mr. Dukes's claims against the Office of the Attorney General and the DLLR are therefore barred.

### B. Quasi-Judicial Immunity

Suits for monetary damages serve the function of discouraging improper and unconstitutional action by public officials. *See Forrester v. White*, 484 U.S. 219, 223 (1988). "In some situations, however, the threat of liability for damages hinders, rather than advances, the prospects that public officials will perform their duties in the public interest." *Ostrzenski v. Seigel*, 177 F.3d 245, 248-49 (4th Cir. 1999) (citing *Forrester*, 282 U.S. at 223-24). Thus, "there are some officials whose special functions require a full exemption from liability." *Butz v. Economou*, 438 U.S. 478, 508 (1978); *Ostrzenski*, 177 F.3d at 249. For this reason, judges and prosecutors performing official duties related to the judicial phase of the criminal process are immune from such suits. *Ostrzenski*, 177 F.3d at 249 (citations omitted). The Supreme Court and the Fourth Circuit also have extended this liability shield to "'quasi-judicial' agency officials," *id.* (citing *Butz*, 438 U.S. at 511-17), including officials in state as well as federal agencies. *Butz*, 438 U.S. at 496-500. This "quasi-judicial immunity" is extended when (1) the nature of the official's functions are similar to those of a judge, (2) a strong need exists for the official to perform essential functions for the public good without fear of harassment and

---

Cir. 1986) ("*Younger* does not invariably require dismissal of [section] 1983 damage actions.").

intimidation, and (3) adequate procedural safeguards exist to protect against constitutional deprivations. *See Ostrzenski*, 177 F.3d at 249.

Under these criteria, as elaborated in *Ostrzenski*, both Examiner Woodland-Hargrove and Chairperson Watts-Lamont are absolutely immune from Mr. Dukes's suit for damages. First, their official functions leading to the actions at issue in this case are similar to those of a judge. Mr. Dukes alleges that Examiner Woodland-Hargrove and Chairperson Watts-Lamont violated his constitutional right to due process by the manner in which they ruled against his unemployment benefits claim during appeals through the DLLR process.   He complains of the treatment of subpoena requests, hearsay evidence, and a petition for review; all the actions are traditionally those of a judge.

Second, a sufficiently strong need exists to protect DLLR hearing examiners and board of appeals members from harassment and intimidation. Because employers are liable for a portion of an employee's unemployment benefits, DLLR examiners and boardmembers make "adjudicative decisions between adverse parties," and thus "necessarily frustrate the ambition of one side or the other." *See Howard v. Food Lion*, 232 F.Supp.2d 585, 595 (M.D.N.C. 2002) (finding that a state agency referee had absolute quasi-judicial immunity when denying an application for unemployment benefits).  DLLR examiner decisions must be based on the specific facts and legal issues presented, and not on the otherwise unavoidable subconscious contemplation of which party is more likely to bring suit under §1983.

Finally, there are adequate procedural safeguards in the DLLR process to merit a finding of quasi-judicial immunity.  In proceedings before the hearing examiner, a claimant may be represented by a lawyer, Md. Code Ann., Lab. & Empl. §8-507(a), and hearings must be

conducted in accordance with the Maryland Administrative Procedure Act. *See id.* at §8-506(a)(2)(ii). While hearing examiners are not bound by statutory or common law rules of evidence or technical rules of procedure, *id.* at §8-506(a)(2)(i), parties are entitled to call witnesses, offer rebuttal evidence, and cross-examine any witness that another party calls. Md. Code Ann., State Gov't. §1-213; Md. Code Ann., Lab. & Empl. §8-506(a)(2)(ii).  And, critically, a final decision of the Board of Appeals may be appealed to Maryland state courts. Md. Code Ann., Lab. & Empl. §8-5A-12(a)(1).  The state court has the authority to reconsider factual determinations if Board of Appeals findings of fact are not supported by evidence that is substantial in view of the entire record, *id.* at §8-5A-12(d)(1), and to consider questions of law and constitutional questions *de novo*. In all, while the procedural safeguards may not be as strong as those the Fourth Circuit found to be sufficient in *Ostrzenski*, where the physician peer review process required that charges be proven with clear and convincing evidence, they are nonetheless adequate. *See, e.g.*, *Traversa v. Ford*, 718 F.Supp.2d 639, 646 (D. Md. 2010) (finding quasi-judicial immunity available for employees of the Maryland Commission on Human Relations, where Commission decisions may be appealed following the conclusion of the administrative process); *Howard*, 232 F.Supp.2d at 595-596 (finding the "procedural safety net" of judicial review adequate to satisfy the *Ostrzenski* factors).

Accordingly, both Hearing-Examiner Beth Woodland-Hargrove and Board of Appeals Chairperson Donna Watts-Lamont are immune from suit for damages in federal court under the doctrine of quasi-judicial immunity. In so ruling, this court need not pass judgment on the constitutionality of the DLLR's hearing procedures. *See Ward v. Johnson*, 690 F.2d 1098, 1104-05 (4th Cir. 1982) (finding absolute immunity for disciplinary hearing committee member for an

adverse ruling on the right to call and cross-examine live witnesses, even assuming that a prisoner has a constitutional right to do so). Mr. Dukes may continue to contest the constitutional issues in his state court appeals. He may not, however, maintain this federal court action for monetary damages against defendants Woodland-Hargrove and Watts-Lamont.

### C. Qualified Immunity

The final two defendants, Chief Hearing Examiner Judy Smylie and DLLR Secretary Alexander Sanchez, did not carry out judicial functions in Mr. Dukes' case or have the responsibility to do so. They are not quasi-judicial officials for the purpose of this suit. Nonetheless, they are immune from Mr. Dukes's claims under the doctrine of qualified immunity.

"Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (internal quotation marks omitted). Under the State of Maryland's detailed administrative process for resolving unemployment claims, there is no statutory or constitutional duty for the Chief Hearing Examiner or the Secretary of the DLLR to intervene in an ongoing adjudication. Assuming, arguendo, that Hearing-Examiner Woodland-Hargrove violated Mr. Dukes's constitutional right to due process, the proper response by defendants Smylie and Sanchez would have been to allow the DLLR appeals process to remedy any error. This is exactly what they did. Defendants Smylie and Sanchez violated neither the law nor the Constitution, so Mr. Dukes's claims against them must

be dismissed as well.

## **CONCLUSION**

For all of the reasons set forth above, the defendants' motion to dismiss will be granted.

A separate order follows.

<u>September 27, 2011</u>                                  /s/
Date                                                       Catherine C. Blake
                                                           United States District Judge